241 P.3d 415 (2010)
STATE of Washington, Respondent,
v.
Anthony David KOSS, Appellant.
No. 28185-0-III.
Court of Appeals of Washington, Division 3.
August 19, 2010.
Publication Ordered October 12, 2010.
*416 Douglas Dwight Phelps, Phelps & Associates, P.S., Anthony David Koss (Appearing Pro Se), Spokane, WA, for Appellant.
Mark Erik Lindsey, Spokane County Prosecuting Attorneys, Andrew J. Metts III, Spokane County Pros. Offc., Spokane, WA, for Respondent.
SWEENEY, J.
¶ 1 This is a prosecution for first degree burglary. The defendant stood at an open door and punched the victim, who was in her house. We conclude that this supports the necessary elements for first degree burglary. We also conclude that the defendant's right to a public trial was not violated by an instruction conference held in chambers. Nor were the court's instructions to the jury flawed. The defendant also assigns error to a number of the court's discretionary rulings and urges that the prosecutor committed misconduct during the course of the trial; conduct that we should characterize as flagrant and review in the first instance here on appeal. We conclude the court's decisions were well within its discretionary authority and we conclude that the prosecutor's comments did not amount to misconduct. We therefore affirm the conviction.

FACTS
¶ 2 Anthony D. Koss punched Katy Jones in the mouth after she opened the door to her home. She was in her house; Mr. Koss was on the porch. She did not know him before the assault. She called police and described Mr. Koss and his companion. Police investigated and found the men in a home across the street from Ms. Jones. Ms. Jones identified both Mr. Koss and his companion.
¶ 3 The State charged Mr. Koss with first degree burglary.
¶ 4 The court instructed the jury that to convict Mr. Koss for first degree burglary it had to find that he (1) entered or remained unlawfully in a building; (2) that the entering *417 or remaining was with intent to commit a crime against a person or property therein; (3) that in so entering or while in the building or in immediate flight from the building he assaulted a person; and (4) that any of these acts occurred in the state of Washington. Clerk's Papers (CP) at 49 (Instruction 5).
¶ 5 The jury found Mr. Koss guilty of first degree burglary.

DISCUSSION

UNANIMITY INSTRUCTIONFIRST DEGREE BURGLARY
¶ 6 Mr. Koss contends that he was entitled to an instruction that required the jury to be unanimous on whether he assaulted Ms. Jones while she was inside her house or outside as he fled from the building. State v. Gilbert, 68 Wash.App. 379, 842 P.2d 1029 (1993).
¶ 7 The jury, of course, had to unanimously conclude that the criminal act charged in the information had been committed. State v. Petrich, 101 Wash.2d 566, 569, 683 P.2d 173 (1984), modified on other grounds by State v. Kitchen, 110 Wash.2d 403, 405-06, 756 P.2d 105 (1988); State v. Williams, 136 Wash.App. 486, 496, 150 P.3d 111 (2007). And here it did so.
¶ 8 To convict Mr. Koss of first degree burglary, the State had to show, and the jury had to be convinced, that he entered Ms. Jones's house unlawfully and assaulted her. RCW 9A.52.020(1). That statute provides two alternative means by which the crime can be committedeither by being armed with a deadly weapon or by assaulting any person. See Williams, 136 Wash.App. at 498, 150 P.3d 111.
¶ 9 A unanimity instruction would be required if the State charged a single first degree burglary based upon two distinct criminal acts that are not alternative means of committing that crime, for example if there were two assaults. Id. But here, the burglary charge was based on a single assault. The question for the jury was whether the assault occurred inside Ms. Jones's house or outside. The jury concluded that it occurred inside and that finding is easily supported by Ms. Jones's testimony. Mr. Koss says he punched her outside of her home. The jury did not believe him. That was its prerogative. State v. Walton, 64 Wash.App. 410, 415-16, 824 P.2d 533 (1992). The court properly instructed the jury on the elements of first degree burglary. CP at 48, 49. There was no need for a separate unanimity instruction.
¶ 10 Mr. Koss relies on Gilbert for the proposition that the finding that he committed first degree burglary required a unanimity instruction because he testified that the assault occurred outside. Gilbert, 68 Wash. App. at 381, 842 P.2d 1029. His reliance is misplaced. There, Mr. Gilbert, the defendant, burglarized a home and was confronted outside by a man; Mr. Gilbert assaulted that man. He was convicted of first degree burglary. Id. At that time, the first degree burglary statute provided:
(1) A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a dwelling and if, in entering or while in the dwelling or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person therein.

Former RCW 9A.52.020 (1975) (emphasis added). The court of appeals read the statute to require an assault "therein," and concluded that the assault outside did not elevate a residential burglary to first degree and reversed. Gilbert, 68 Wash.App. at 383-84, 842 P.2d 1029. The State failed to prove the element, "assaults any person therein," and so the evidence did not support a first degree burglary conviction. Id. at 384, 842 P.2d 1029.
¶ 11 The State's theory and proof here was that Mr. Koss assaulted Ms. Jones in her home. And so his conviction turned on whether the State successfully showed that. The jury said the State proved the necessary elements. Moreover, RCW 9A.52.020(1) was amended in 1996 to remove the word "therein" from subsection (b). LAWS OF 1996, ch. 15, § 1. So the strict statutory construction necessary in Gilbert is of no moment in Mr. *418 Koss's case. We then reject this assignment of error.

SUFFICIENT EVIDENCE
¶ 12 Mr. Koss next contends that the State failed to prove that he entered the building intending to commit an assault. He argues that the assault either occurred outside the house without any intent to enter, or alternatively, as the men left the front porch without any intent to enter the house. Under either scenario, he urges that there was only a fourth degree assault and no burglary.
¶ 13 We view the evidence and all reasonable inferences in a light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980). We consider circumstantial evidence as reliable as direct evidence. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on the persuasiveness of the evidence. Walton, 64 Wash.App. at 415-16, 824 P.2d 533.
¶ 14 Ms. Jones never left her house. She stood a couple of feet inside the door when Mr. Koss punched her. She did not invite Mr. Koss into the home. He breached the doorway with his fist and punched her in the mouth. This is a sufficient showing that Mr. Koss entered the home with the intent to assault. The term "enter" includes the insertion of any part of the person's body. See RCW 9A.52.010(2). Ultimately, a rational trier of fact could find each element of first degree burglary beyond a reasonable doubt based upon Ms. Jones's testimony. Green, 94 Wash.2d at 221, 616 P.2d 628; RCW 9A.52.020(1).

RIGHT TO PUBLIC TRIAL
¶ 15 Mr. Koss next contends that he was denied his right to a public trial during critical stages of the proceedings because (1) the court conducted a jury instruction conference in chambers without "receiving assent from the defendant" or "allowing observation by the public," and (2) the court responded to two written questions from the jury without making a record to show that the questions were discussed in open court or that the defendant was present. Br. of Appellant at 22.
¶ 16 A defendant's constitutional right to a public trial requires that the court be open during "adversary proceedings" including evidentiary phases of the trial, suppression hearings, voir dire, and jury selection. State v. Sadler, 147 Wash.App. 97, 114, 193 P.3d 1108 (2008); State v. Rivera, 108 Wash.App. 645, 32 P.3d 292 (2001). But "[a] defendant does not ... have a right to a public hearing on purely ministerial or legal issues that do not require the resolution of disputed facts." Sadler, 147 Wash.App. at 114, 193 P.3d 1108.
¶ 17 Here, counsel and the court met off the record in chambers and everyone agreed to remove accomplice language from the first degree burglary elements instruction. Report of Proceedings (RP) at 271. The court and counsel then went on the record in open court (with Mr. Koss now present) to address any objections or exceptions to the instructions. No one objected to the instruction or to the procedure.
¶ 18 The in-chambers conference was a ministerial legal matter. It did not involve disputed facts. Sadler, 147 Wash.App. at 114, 193 P.3d 1108. And ultimately it did not then implicate Mr. Koss's right to a public trial. Nor was it a critical stage that required Mr. Koss's presence. In re Pers. Restraint of Lord, 123 Wash.2d 296, 306, 868 P.2d 835 (1994) (in-chambers conferences between court and counsel on legal matters are not critical stages except when the issues involve disputed facts).
¶ 19 The jury made two written inquiries during deliberations. First, it asked, "Mr. Drake stated that Tony Coss [sic] was DOC [Department of Corrections] can we factor that in? And if so what is the meaning?" CP at 61. The court responded, "Please re-read your jury instructions." Id. It also asked for a CD player, "Need CD player to play 911 call." Id. at 62. The court noted as its response "(given one timecomputer play back)." Id. The record contains no further information about the jury *419 inquiries, including whether the court consulted with counsel before communicating its answers.
¶ 20 Recently, in State v. Sublett,[1] the court rejected arguments that an in-chambers conference to address a jury question on one of the trial court's instructions implicated the defendants' right to a public trial. Citing Sadler, the court reasoned that the jury inquiry involved a purely legal issue that arose during deliberations and did not require the resolution of disputed facts. Sublett, 156 Wash.App. at 181, 231 P.3d 231. And "questions from the jury to the trial court regarding the trial court's instructions are part of jury deliberations and, as such, are not historically a public part of the trial." Id. at 182, 231 P.3d 231. The court held that because "the public trial right does not apply to the trial court's conference with counsel on how to resolve a purely legal question which the jury submitted during its deliberations,... the trial court did not violate the appellants' public trial right by responding to the jury's question in writing as CrR 6.15(f) provided." Id. We agree.
¶ 21 The same rationale applies here to Mr. Koss's claim that his right to a public trial was violated. However, nothing here suggests that the court held an in-chambers conference or even contacted counsel.
¶ 22 The jury's first written inquiry was part of deliberations and it did not require the resolution of any factual questions. The court gave an appropriate neutral response, simply telling the jury to reread the instructions. See State v. Allen, 50 Wash.App. 412, 420, 749 P.2d 702 (1988). The second inquiry and response by the court was also neutral; it simply involved giving the jury access to an audio player during deliberations. The trial court followed CrR 6.15(f)(1); it provided written responses. Mr. Koss's right to a public trial was not violated by the court's response.
¶ 23 Mr. Koss specifically claims only that his right to a public trial was violated. But he is correct that the discussion of a jury inquiry is a critical stage of the trial at which the defendant has a right to meaningful representation by counsel. Rogers v. United States, 422 U.S. 35, 39, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); see CrR 6.15(f)(1) (court shall respond to jury inquiries in the presence of or after notice to the parties or their counsel). Communications between the judge and jury without the defendant's presence are error, and the State must prove the communications harmless beyond a reasonable doubt. State v. Caliguri, 99 Wash.2d 501, 509, 664 P.2d 466 (1983); State v. Russell, 25 Wash.App. 933, 948, 611 P.2d 1320 (1980).
¶ 24 Mr. Koss has not, however, supplied an adequate record to permit further review of his claim that he was denied his right to be present. See State v. Rienks, 46 Wash.App. 537, 544, 731 P.2d 1116 (1987). Even assuming the court's responses were ex parte communications with the jury, they were clearly neutral and, for us, harmless beyond a reasonable doubt. Allen, 50 Wash.App. at 420, 749 P.2d 702 (harmless error when neutral instruction conveyed no affirmative information).

INSTRUCTIONDOC STATUS
¶ 25 Mr. Koss next argues that the reference to him being on DOC status was evidence of prior misconduct and prejudicial, and the court therefore erred by failing to instruct the jury to disregard it.
¶ 26 Defense witness Mr. Drake testified on direct examination that he was the one who hit Ms. Jones. He said he then ran down the street and into Delanzo Pleasant's house. Defense counsel asked if he saw where Mr. Koss went. Mr. Drake responded, "Yeah, he ran with me. He wasn't, you know, we were both freaking out. He was on DOC at the time, and we didn't want to be anything [sic] involved in that, so." RP at 240. On cross-examination, Mr. Drake responded to the prosecutor's questions about why he ran. The prosecutor asked if Mr. Koss ran, and Mr. Drake responded, "Yes." Id. at 252. The prosecutor then asked, "And was it your testimony because something about DOC?" Id. at 253. Mr. Drake responded, "Yeah." Id. Defense counsel objected. *420 The court then refused to allow any further inquiry about DOC status. The jury asked about it during deliberations.
¶ 27 First of all, the State had a right to ask about the DOC status during cross-examination because Mr. Koss's witness raised the subject on direct. State v. Gefeller, 76 Wash.2d 449, 455, 458 P.2d 17 (1969). Second, the court had ample discretionary authority to handle the jury inquiry the way it didby instructing the jury to reread the instructions. State v. Studebaker, 67 Wash.2d 980, 987, 410 P.2d 913 (1966).

PROSECUTORIAL MISCONDUCT
¶ 28 Mr. Koss next argues that the prosecutor committed prejudicial misconduct when he (1) appealed to the jurors' passions by extolling them to focus on protecting Ms. Jones's fundamental right to be secure in her home instead of requiring that the State prove the elements of the crime it charged, (2) suggested the State's burden of persuasion was less than beyond a reasonable doubt, and (3) argued that defense witnesses were not credible because they could not identify the victim's ethnicity.
¶ 29 Mr. Koss had to show both that the comment was improper and that it was prejudicial. State v. Brown, 132 Wash.2d 529, 561, 940 P.2d 546 (1997). Mr. Koss did not object to any of the prosecutor's closing comments at trial. So he has the added burden to show that the conduct was so flagrant and ill intentioned that it caused an enduring and resulting prejudice that could not have been remedied by a curative instruction. State v. McKenzie, 157 Wash.2d 44, 52, 134 P.3d 221 (2006). And the absence of an objection "strongly suggests ... that the argument or event in question did not appear critically prejudicial to [him] in the context of the trial." Id. at 53 n. 2, 134 P.3d 221 (emphasis omitted) (quoting State v. Swan, 114 Wash.2d 613, 661, 790 P.2d 610 (1990)).
¶ 30 Mr. Koss's claims are based in part on this statement in the State's closing argument:
At the start of this process, the State asked if a person has a fundamental right to be secure in their home and to be free from bodily injury, and it was unanimous that when a person is in their home, they should be secure in their own safety. They should be secure that their way of life ... is not disturbed by some other person who is not invited to be in there or consents to any type of harmful conduct, and you folks have, basically, been brought here to determine whether or not the defendant violated Katy Jones' right to be secure in her home and free from bodily injury.

RP at 317 (emphasis added). He contends the italicized portions shifted the State's burden of proof from proving the elements of the crime beyond a reasonable doubt to protecting the rights of the victim. But after making these statements, the prosecutor discussed the elements of first degree burglary and the State's burden of proving each element beyond a reasonable doubt. The comments were not improper.
¶ 31 Mr. Koss also claims misconduct based on this statement:
As the State has indicated, the critical issue for you folks to decide is whether the defendant committed the crime of First Degree Burglary, and it's the State's responsibility to prove each and every element of the charge beyond a reasonable doubt.
Now, when you think of that concept beyond a reasonable doubt, it's not beyond all possible doubt. It's okay if there are some questions that are unanswered so long as the information you have before you leads you to believe that the defendant committed this crime.

Id. at 319 (emphasis added).
¶ 32 He now argues that the italicized portion lessens the State's burden of persuasion. We disagree. The prosecutor's statement can be fairly read as explaining that reasonable doubt is not all possible doubta concept consistent with the court's instruction that beyond a reasonable doubt means an "abiding belief in the truth of the charge." CP at 47 (Instruction 3). Moreover, the prosecutor's statement is consistent with the court's general instruction to decide the case *421 based upon the evidence presented during trial. Id. at 43 (Instruction 1). We presume the jury followed the court's instructions. State v. Kirkman, 159 Wash.2d 918, 937, 155 P.3d 125 (2007). In any event, we conclude that the prosecutor's comments hardly meet the required showing of flagrant or ill-intentioned.
¶ 33 Finally, Mr. Koss contends this comment by the prosecutor amounted to misconduct:
Well, Delanzo Pleasant can't even figure out the ethnicity of the female nor can Andrew Drake nor can Jon Boltz, and, of course, the defendant knows what ethnicity she is because he saw her testify.
RP at 323-24.
¶ 34 He contends the comments were an inflammatory attack on the defense witness's credibility. They were not. And a prosecutor is afforded wide latitude in closing argument to draw and express reasonable inferences, including arguing the credibility of witnesses based on the evidence. State v. Millante, 80 Wash.App. 237, 250, 908 P.2d 374 (1995). That is what occurred here. The prosecutor argued reasonable inferences, that the defense witnesses were not credible, as further evidenced by their inability to correctly identify the victim's ethnicity.
¶ 35 This is not a case of improper burden shifting like State v. Fleming.[2] There, the prosecutor told the jury it could acquit only if it found the complaining witness had lied or was confused. That was misconduct. Further, the prosecutor argued there was no reasonable doubt because there was no evidence the witness was lying or confused, and if there had been such evidence, the defendants would have presented it. Fleming, 83 Wash.App. at 214-16, 921 P.2d 1076.
¶ 36 We affirm the conviction.
WE CONCUR: KULIK, C.J., and SIDDOWAY, J.
NOTES
[1] State v. Sublett, 156 Wash.App. 160, 181, 231 P.3d 231 (2010).
[2] State v. Fleming, 83 Wash.App. 209, 921 P.2d 1076 (1996).