[No. 38537.    Department Two.    March 16, 1967.]

THE STATE OF WASHINGTON, *Respondent,* v. MARK EDWIN
COOK, *Appellant.**

*Mark Edwin Cook,* pro se.

*Richard E. Keefe,* for appellant (Appointed counsel for
appeal).

*Reported in 424 P.2d 1006.

*Charles O. Carroll* and *Robert E. Dixon,* for respondent.

WEAVER, J.—Defendant appeals from a judgment and sentence entered after a jury found him guilty on three counts of robbery, one while armed with a deadly weapon.

About 8 p.m. March 26, 1965, a man handed a note to the cashier of Rhodes University Village department store, Seattle, demanding all the cash in the cashier's cage. Although he announced he had a gun, it was not seen by the cashier. As the man left with the money, the cashier tripped the burglar alarm. A security officer of the store followed the man until he entered his car and drove away. The security officer noted the description and license number of the automobile.

Alert and prompt police procedures produced the following: the automobile was owned by defendant, Mark Edwin Cook; he lived in Seattle; he had a prior criminal record, and the files of the police department furnished defendant's picture.

Two detectives and two uniformed policemen drove immediately to defendant's residence; his car was not there. They proceeded to Rhodes department store where the cashier identified defendant's photograph from a packet of five different pictures. They returned to defendant's home where his car was then parked. The two detectives were admitted by defendant; the policemen secured the front and back of the house.

Present in the house were defendant, his wife, his minor son and defendant's mentally disturbed brother, recently discharged from the Army. Defendant and the detectives went to the kitchen where defendant was placed under arrest. A search of the immediate area was begun. Defendant was eventually taken to the police station but the search of the house continued for several hours. During this period the police discovered a .45 caliber revolver, ammunition, and approximately $600 cash in an upstairs bedroom. The gun was found "in a paneled area near the top of the ceiling in the middle bedroom of the house on the second

floor." The room was later identified as the bedroom occupied by defendant's mentally disturbed brother, who claimed the ammunition, gun, and cash. He later denied ownership of the gun. An immediate check of the serial number of the gun revealed that it had been stolen in a robbery of the Bon Marche a short time before.

Defendant's brother was arrested after an altercation during which he bit one of the detectives.

A police lineup was held the next day. Defendant, his brother, and five other men were in it. Defendant was identified as the perpetrator of three robberies by at least two witnesses to each robbery: (1) at the Rhodes department store on March 26, 1965; (2) at the Bon Marche department store February 23, 1965, from which the revolver was stolen; and (3) at Pay'n Save Store on March 25, 1965.

Defendant was told that his brother would appear in the lineup; and that if he were not identified, he would be released. After the lineup, defendant was either told that his mentally retarded brother would be released or had been released. The indefiniteness is immaterial; he was released prior to defendant's written confession.

Thereafter, defendant confessed orally to the three robberies and confessed in writing to commission of the Pay'n Save robbery on March 25, 1965.

At the trial, the gun and ammunition, as well as defendant's oral and written confessions, were admitted into evidence.

Defendant's appellate counsel, who did not try the case, makes eight assignments of error which we group into three categories:

1. The gun and ammunition should not have been admitted into evidence, for they were secured by an unreasonable and unconstitutional search.

2. Defendant's oral and written statements of guilt were not made voluntarily and should have been excluded.

3. Defendant's confessions were obtained in derogation of his right to counsel, pursuant to the sixth amendment to the federal constitution.

On appeal, defendant also filed a pro se brief in which he made additional assignments of error that we consider later.

It is beyond debate that the officers had reasonable grounds and probable cause to arrest defendant. *State v. Nolan,* 69 Wn.2d 961, 421 P.2d 679 (1966); *State v. Davis,* 69 Wn.2d 127, 417 P.2d 622 (1966); *State v. Massey,* 68 Wn.2d 88, 411 P.2d 422 (1966). The Rhodes department store cashier had identified defendant's photograph; the store security officer had seen defendant's automobile leave the scene of the crime.

The critical issue is whether the search of the house was reasonable as incident to a lawful arrest, or whether the search transcended permissible constitutional limitations.

In *State v. Biloche,* 66 Wn.2d 325, 402 P.2d 491 (1965), this court pointed out that:

> The law is equally clear that a search without a warrant may be made incident to an otherwise lawful arrest without a warrant where the arresting officers had reasonable grounds to believe that a felony had been, was being or was about to be committed by the person arrested. *State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1965); *State v. Hughlett,* 124 Wash. 366, 214 Pac. 841 (1923); *Ker v. California,* 374 U.S. 23, 10 L. Ed. 2d 726, 83 Sup. Ct. 1623 (1963).

Contemporaneously with the arrest, the officers may search the premises under the immediate control of the person arrested. *United States v. Rabinowitz,* 339 U.S. 56, 94 L. Ed. 653, 70 Sup. Ct. 430 (1950); *Agnello v. United States,* 269 U.S. 20, 70 L. Ed. 145, 46 Sup. Ct. 4, 51 A.L.R. 409 (1925); *Marron v. United States,* 275 U.S. 192, 72 L. Ed. 231, 48 Sup. Ct. 74 (1927).

In *Harris v. United States,* 331 U.S. 145, 91 L. Ed. 1399, 67 Sup. Ct. 1098 (1947), the United States Supreme Court approved a search without a warrant, incident to a lawful arrest, that extended throughout a 4-room apartment, all of

which was under the control of the defendant, who was arrested in the living room.

■ We do not accept defendant's contention that the house in which he lived was not under his control because it was owned by his mother. The occupancy of the house by defendant's mother was approximately one night a week when she was relieved of her regular employment as a housekeeper elsewhere. Defendant and his family were the principal residents of the house. In these circumstances, the house could properly be regarded as defendant's dwelling for the purpose of the search.

*Drayton v. United States*, 205 F.2d 35 (5th Cir. 1953), is not apposite. The search was an exploratory one made of a 2-story rooming house.

■ We do not believe that the search in the instant case went beyond that which the situation reasonably demanded; hence, it was not error to admit the gun and ammunition into evidence.

The court conducted a hearing pursuant to Rule of Pleading, Practice and Procedure 101.20W on the admissibility of defendant's written confession of the Pay'n Save robbery and his oral admissions of the other robberies.

The main thrust of defendant's argument that his confession was not voluntarily given pivots on his contention that he made a "deal" with the police officers to make the confession in return for the release of his brother.

We have made an examination of the record in accordance with our recent decision in *State v. Hoffman,* 64 Wn.2d 445, 392 P.2d 237 (1964), in order to determine whether the bounds-of-due-process requirements had been exceeded. We conclude, as did the trial court, that no "deal" had been made, and that defendant's confession was voluntary, for it is undisputed that defendant knew his brother had been released before he signed his confession.

Defendant was tried before a jury September 13, 1965. He relies on *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 Sup. Ct. 1758 (1964), in support of his contention that he should have been advised of his right to have coun-

sel present at his interrogation. The rule announced in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 Sup. Ct. 1602 (June 13, 1966), was, in *Johnson v. New Jersey*, 384 U.S. 719, 16 L. Ed. 2d 882, 86 Sup. Ct. 1772 (June 20, 1966), held to be applicable only to cases in which trial began after June 13, 1966.

Defendant was not denied his right to counsel under *Escobedo, supra,* and does not qualify under *Miranda, supra,* as limited by *Johnson v. New Jersey, supra.*

We turn now to two additional assignments of error set forth in defendant's pro se brief on appeal.

■■ Defendant argues that two of the counts of robbery should have been dismissed because he was not given a preliminary hearing, and that he was forced to give incriminating evidence against himself by appearing in the police lineup.

We find no merit in either assignment. The first is answered contrary to defendant's contention in *State v. Kanistanaux*, 68 Wn.2d 652, 414 P.2d 784 (1966); the second in *Schmerber v. California*, 384 U.S. 757, 16 L. Ed. 2d 908, 86 Sup. Ct. 1826 (1966). See also *State v. Craig*, 67 Wn.2d 77, 406 P.2d 599 (1965); *State v. Pitmon*, 61 Wn.2d 675, 676, 379 P.2d 922 (1963); *Caldwell v. United States*, 338 F.2d 385, 389 (8th Cir. 1964), *cert. den.* 380 U.S. 984, 14 L. Ed. 2d 277, 85 Sup. Ct. 1354.

The judgment is affirmed.

FINLEY, C. J., DONWORTH and ROSELLINI, JJ., and LANGENBACH, J. Pro Tem., concur.

---

June 2, 1967. Petition for rehearing denied.