[No. 39066.   Department One.   March 30, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD GREEN, *Appellant*.*

*Reported in 425 P.2d 913.

*William J. Grant*, for appellant (Appointed counsel for appeal).

*George A. Kain* and *Matt L. Alexander*, for respondent.

DENNEY, J. †—Richard Green was convicted by a jury of forgery in the first degree and appeals from a judgment entered pursuant to such verdict. The forgery involved the signing of the name "James J. Jeffries" to a sales slip at Northtown Crescent Department Store in Spokane on November 13, 1965, after a man presented a "charg-a-plate" upon which was engraved the name "James J. Jeffries." Mr. Jeffries had lost his charg-a-plate the previous evening. He had given no one permission to use it. The purchaser secured a No. 10 Downing Street suit and a raincoat and signed the sales slip in the presence of the clerk who waited upon him. He proceeded to another department of the store where he purchased other clothing and then to the women's department where the charg-a-plate was taken from him because of the size of purchases being made. The forger, a Negro with a goatee and mustache, was

---

†Judge Denney is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

accompanied by a woman who was seen to enter an automobile by a clerk who took the license number of the car.

Upon ascertaining that a forgery had been committed the Spokane Police Department was notified. The police secured a detailed description of the forger, of the clothing which had been purchased and which was distinctive and extreme in style, and the license number of the car. Three days later Detective Solinsky of the Spokane Police Department furnished this information to Detective Peck of the department. That night about 11 p.m., the suspect car was observed by Detective Peck parked near a pool hall in Spokane. He entered the pool hall and observed appellant who answered the description and was wearing clothing similar to that previously described to him. Appellant was asked for identification which he could not or did not give. Detective Peck left the pool hall, went to the police station to secure another officer, returned and placed appellant under arrest and took him to the Spokane police station.

Appellant was interviewed by the officers and was informed of his right to counsel and to remain silent. Appellant stated to the officer that he "had friends on the outside who had funds to retain a lawyer for him."

Appellant was charged with forgery in the first degree in the justice court at Spokane on November 18, 1965, and was immediately taken before the justice of the peace where he was again informed of his right to counsel and that such would be supplied at public expense if he could not afford an attorney. Appellant did not request appointment of an attorney at that time or at any time until February 7, 1966, almost three months later, when an attorney was appointed by the justice of the peace. A preliminary hearing was demanded which took place on March 30, 1966. Appellant was bound over to the superior court. An information was filed April 4, 1966, and trial was continued until the May term of court at appellant's request.

At trial appellant moved to suppress the clothing seized from him at the time of arrest as evidence on the ground that the arrest was made without probable cause

and the articles seized were therefore inadmissible. This was denied and is now assigned as error. We have recently set out the rules which govern an arrest for a felony without a warrant in *State v. Massey,* 68 Wn.2d 88, 89, 411 P.2d 422 (1966), as follows:

> An officer who effects an arrest without a warrant is governed by general rules stated variously as follows: (1) An officer has cause for an arrest if he has reasonable grounds for suspicion, together with evidence of circumstances to warrant a cautious man in believing the accused to be guilty. *State v. Hughlett,* 124 Wash. 366, 214 Pac. 841 (1923). (2) An officer has probable cause to arrest without a warrant if he has knowledge which would convince a cautious but disinterested person that the accused is guilty of a felonious offense. *State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1965); *State v. Smith,* 56 Wn.2d 368, 353 P.2d 155 (1960); *Beck v. Ohio,* 379 U.S. 89, 13 L. Ed. 2d 142, 85 Sup. Ct. 223 (1964); *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 Sup. Ct. 407 (1963). (3) An officer is not required to have knowledge of evidence sufficient to establish the guilt of the accused beyond a reasonable doubt. *Draper v. United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 Sup. Ct. 329 (1959).

Probable cause has also been defined as follows in the case of *State v. Nolan,* 69 Wn.2d 961, 964, 421 P.2d 679 (1966):

> If a police officer has probable cause, *i.e.,* if he believes and has good reason to believe that a person has committed a felony, he may arrest without a warrant. *State v. Baker, supra* [68 Wn.2d 517, 413 P.2d 965 (1966)]; *State v. Biloche, supra* [66 Wn.2d 325, 402 P.2d 491 (1965)]. The probable cause essential to support a lawful arrest without a warrant is a belief based upon facts within the knowledge of the arresting officer, persuasive enough to convince a judge that a cautious but disinterested man would also believe the arrested party guilty. *State v. Hoffman, supra* [64 Wn.2d 445, 392 P.2d 237 (1964)]; *State v. Smith,* 56 Wn.2d 368, 353 P.2d 155 (1960); *State v. Hughlett,* 124 Wash. 366, 214 Pac. 841 (1923).

See also *State v. Davis,* 69 Wn.2d 127, 417 P.2d 622 (1966).

The arresting officer had within his knowledge information that a felony had been committed, a full and detailed

description of the person who committed it, the fact that appellant answered the description and that appellant was wearing clothing of the color, style and general size secured at the store and the fact that the car outside the pool hall had the same license number as that used by the woman accompanying the person who committed the forgery. This information was sufficient to cause a cautious and disinterested person to believe that a felony had been committed and that appellant was the man who committed it.

Appellant contends that the officer should have left the premises and secured a warrant of arrest. The officer made his observation late at night in a public place. The suspect could have escaped during the time necessary to secure a warrant. We find nothing unreasonable in making the arrest without a warrant.

Evidence is admissible when obtained by means of a search and seizure incident to a lawful arrest. *State v. Brooks,* 57 Wn.2d 422, 357 P.2d 735 (1960); *State v. Greco,* 52 Wn.2d 265, 324 P.2d 1086 (1958); *State v. Hoffman,* 64 Wn.2d 445, 392 P.2d 237 (1964). As appellant's arrest was lawful, the evidence was properly admitted.

Appellant next contends that it was error to deny his motion to dismiss upon the ground of denial of counsel during the period from November 18, 1965, to February 7, 1966. Appellant was informed on November 18, 1965, by the justice of the peace of his right to an attorney and that such would be supplied at public expense. Entries in the order by which the justice of the peace bound appellant over to the superior court disclose continuances on December 17, 1965, and January 17, 1966. This, together with the fact that appellant had informed the police officers that he had friends who had funds to retain a lawyer, leaves the clear inference that the delay was due to the appellant's desire to employ his own attorney with the help of his friends. The court must be apprised of the desire of an indigent for the appointment of counsel. There was no denial of counsel under the circumstances disclosed here when appellant made no request to the justice of the peace until February 7, 1966.

■ The lapse of 90 days impresses us as being overly long in bringing appellant again before the justice of the peace to ascertain if he had secured an attorney, but there is no suggestion of any oppressive action in the meantime, no confessions or admissions were made and no request for a lawyer was made to any police officer. To violate the constitutional provision the refusal must have occurred at a "critical stage" in the pretrial proceedings. In *State v. Louie,* 68 Wn.2d 304, 308, 413 P.2d 7 (1966), we said:

> Allegations in the record that defendant had requested and had been denied assistance of counsel during his stay in the respective hospitals are uncontroverted. Refusal of such requests, whether they were for appointed or retained counsel, however, would not ipso facto constitute an infringement upon rights guaranteed by the tenth amendment to our state constitution or by the sixth amendment to the federal constitution, made obligatory upon the states by the fourteenth amendment to the federal constitution in *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 Sup. Ct. 792 (1963). *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 Sup. Ct. 1758 (1964).
>
> To violate these constitutional provisions, the refusal must have occurred at a "critical stage" in the pretrial proceedings. *Hamilton v. Alabama,* 368 U.S. 52, 7 L. Ed. 2d 114, 82 Sup. Ct. 157 (1961); *White v. Maryland,* 373 U.S. 59, 10 L. Ed. 2d 193, 83 Sup. Ct. 1050 (1963); *Massiah v. United States,* 377 U.S. 201, 12 L. Ed. 2d 246, 84 Sup. Ct. 1199 (1964); *Escobedo v. Illinois, supra; In re Pettit v. Rhay,* 62 Wn.2d 515, 383 P.2d 889 (1963); *State v. Jackson,* 66 Wn.2d 24, 400 P.2d 744 (1965). And, it must appear that the refusal resulted in some reasonably discernible prejudice to the effectiveness of legal assistance ultimately furnished the accused. *DeToro v. Pepersack,* 332 F.2d 341 (4th Cir. 1964). In short, the courts must look to substance rather than labels in ascertaining whether constitutional rights to the assistance of counsel have been violated. *State v. Jackson, supra.*

See also *State v. Callas,* 68 Wn.2d 542, 413 P.2d 962 (1966).

The absence of any showing that appellant requested appointment of an attorney until February 7, 1966, and the absence of any prejudice to appellant because of delay in requesting appointment of counsel takes this case out of the

rule regarding right to counsel announced in *Tacoma v. Heater,* 67 Wn.2d 733, 409 P.2d 867 (1966). However, we hasten to remind prosecuting officials of the admonition contained in the case of *State v. Hoffman, supra,* wherein we said at 450:

It may well be that future developments, or a conviction that law enforcement agencies of the state are persistently indulging in undue and extensive delays between arrest and arraignment, may dictate a reconsideration of our position. Until that time, however, we adhere to our present approach.

■ It is next contended that appellant's right to a speedy trial as guaranteed by art. 1, § 22 of the Washington State Constitution and amendments 5, 6 and 14 of the federal constitution was violated and therefore the information should be dismissed. No motion to dismiss was made at the time counsel was appointed in justice court. No motion was made after filing of the information in superior court until one week before trial and this was not brought to the trial court's attention until the date of trial. We have consistently held that the constitutional guarantee of a speedy trial is there if an accused demands it and that failure to so demand constitutes a waiver. *State ex rel. James v. Superior Court,* 32 Wn.2d 451, 202 P.2d 250 (1949); *State v. Dickens,* 66 Wn.2d 58, 401 P.2d 321 (1965). Appellant must be held to have waived any constitutional guarantee of a speedy trial.

Trial was held within 60 days after filing of the information, therefore there was no violation of the provisions of RCW 10.46.010 which requires trial within 60 days of filing of the information unless delay is caused by defendant.

■ Appellant challenged the entire jury panel solely because it contained no Negroes. The trial court informed appellant that he would conduct an inquiry into the matter if any showing was made of discrimination on account of race or that RCW 2.36.060 had not been followed in compiling the jury list. No showing was made. We agree that the

fact that no Negroes were on the jury panel was insufficient in itself to show discrimination, especially when no evidence was presented as to the percentage of Negroes in the population of Spokane County, nor the percentage of Negroes among the registered voters of that county. "[P]urposeful discrimination may not be assumed or merely asserted. . . . It must be proven, . . . ." *Swain v. Alabama,* 380 U.S. 202, 205, 13 L. Ed. 2d 759, 85 Sup. Ct. 824 (1965).

■ The challenge of the jury panel was not made until the morning of trial. Under these circumstances considerable discretion must rest in the hands of the trial judge as to whether or not the trial will be interrupted to determine a collateral issue. We find no abuse of discretion here in the refusal of the trial court to conduct an inquiry in the absence of some showing of discrimination.

■ One week before trial appellant filed a motion to require the state to produce and make available all statements by witnesses, all confessions and all physical evidence. This motion was not argued until the morning of the trial. The prosecution possessed only a statement from Mr. Jeffries who had already testified at the preliminary hearing and of one Darlene Smalley, who was appellant's companion in the store. Darlene Smalley's name had been endorsed on the state's witness list, but she could not be found. Counsel for appellant was permitted to examine her statement and there is no showing that her testimony would have been helpful to appellant, or, in any event, that she was available as a witness. Appellant made no written statements to the officers and obviously examination just before trial of the clothing would have served no useful purpose. In a long line of cases this court has held that whether or not the prosecution will be required to make evidence available for examination by the defense lies in the discretion of the trial court and its ruling will not be disturbed unless there is a manifest abuse of such discretion. *State v. Thompson,* 54 Wn.2d 100, 338 P.2d 319 (1959); *State v. Mesaros,* 62 Wn.2d 579, 384 P.2d 372 (1963); *State*

*v. Gilman,* 63 Wn.2d 7, 385 P.2d 369 (1963); *State v. Peele,* 67 Wn.2d 893, 410 P.2d 599 (1966). Not only was there no abuse of discretion here, but no prejudice is apparent by denial of the motion to produce.

■ During the examination of Detective Solinsky, relative to his interview with appellant, the following occurred:

> Q. This was about the extent of your conversation with him? [Appellant] A. Yes. After he answered about the clothing being purchased, he said, "I won't talk anymore. I want to talk to my lawyer."

No objection or motion to strike was made. Again, during argument, the deputy prosecuting attorney alluded to the fact that the defendant had said he would not talk further. No objection was made to this argument nor was any request made that the jury be instructed to disregard it. The evidence was inadmissible and the argument improper (*State v. James,* 63 Wn.2d 71, 385 P.2d 558 (1963); *State v. Tembruell,* 50 Wn.2d 456, 312 P.2d 809 (1957)), but the trial court was not given an opportunity to rule on the matter. Under the oft repeated rule that matters will not be reviewed on appeal unless raised in the trial court, we are limited to a determination of whether or not prejudice was so marked and enduring that corrective instructions or admonitions could clearly not have cured any prejudicial effect. *State v. Morris, ante* p. 27, 422 P.2d 27 (1967); *State v. Johnson,* 60 Wn.2d 21, 371 P.2d 611 (1962). We are convinced that had the trial court had a chance to admonish the jury against this evidence and argument no prejudice would result.

■ Appellant requested an instruction which, among other things, told the jury to consider "the clearness or lack of clearness of recollection" as a test for judging weight and credibility of a witness. Instead, the trial court gave a stock instruction on the subject which, after mentioning several tests, stated that the jury should consider any fact or circumstance arising from the evidence in testing credibility. Under the instruction given the defense was left free to argue clearness of recollection as a test. The trial judge

may choose his own language in instructing a jury so long as he covers vital matters contained in requested instructions. We find no error in adopting general terms advising the jury on its duty in judging the credibility of witnesses.

Finally, it is contended that error was committed in denying a motion for a new trial on grounds that the evidence did not establish guilt of appellant beyond a reasonable doubt. He was definitely identified by employees of the store as the person who purchased the clothing, presented the charg-a-plate and signed the sales slip. Clearly this was sufficient to make the issue of guilt for the jury, particularly where no evidence was offered to rebut the state's case.

Judgment of the trial court is affirmed.

FINLEY, C. J., HILL, ROSELLINI, and HALE, JJ., concur.

*Reported in 425 P.2d 874.